**A. C. Larsen, Appellant, v. Union Bank of Chicago, as Trustee under Trust Nos. 2130 and 2131 et al., Appellees.**

**Gen. No. 40,565.**

Opinion filed June 21, 1939.

MATHIAS F. PERZ, of Chicago, for appellant; HAROLD W. HAWES, of Chicago, of counsel.

DANIEL RILEY McMASTER, of Chicago, for appellee John F. Crowley.

MR. JUSTICE HEBEL delivered the opinion of the court.

The action here on appeal by the plaintiff was one for an accounting and to impress an equitable lien upon the *corpus* of a trust estate. The decree confirmed the report of a special commissioner and dismissed the amended bill of complaint for want of equity.

From the facts in the record it appears that on April 9, 1928, Lucy A. Crowley, Kate T. Blankenheim, Florence E. Baker and Austin J. Rooney owned a 15-

acre tract of land at the southeast corner of Lawrence avenue and Thatcher road in Cook county, Illinois. With these owners, one John H. Gelhardt and the Union Bank of Chicago, defendant herein entered into a written agreement dated April 9, 1928, herein referred to as the "Sales Agreement." In it the owners agreed to convey the real estate to the bank as trustee under the terms of a trust agreement executed simultaneously with the sales agreement. Gelhardt therein agreed to subdivide the property, and at his expense erect cement lamp posts, lay cement sidewalks, grade the streets and put in shade trees. He was to have the exclusive sale and management of the subdivision and was to sell the lots at agreed prices. It was further agreed in this contract that—"the purchaser is to make a down payment of twenty-five per cent (25%) and pay one per cent (1%) or more per month of the contract price for a period of thirty-nine (39) months, at which time the unpaid balance shall become due and payable." And it was further provided in the sales agreement that—

"The third party (the bank) is to pay over the down payment of twenty-five per cent (25%) to the second party (Gelhardt) and divide all other collections seventy-five per cent (75%) to the first parties (the owners) and twenty-five per cent (25%) to the second party (Gelhardt). . . ."

The trust agreement referred to in the sales agreement was dated the same day and was between the owners of the real estate (referred to therein as beneficiaries) and the Union Bank of Chicago (therein called "Trustee"). It recited the conveyance of the land therein designated "Trust Property" to the trustee. It provided that the trust property was to be subdivided and sold pursuant to the sales agreement, a copy of which sales agreement was attached and made a part of the trust agreement. It further provided that

the trustee was to make, execute and deliver contracts, deeds and other instruments on trust property sold by the sales agent (Gelhardt) and it was agreed as follows:

"6. The Trustee is to receive and receipt for all moneys paid on lot contracts and the money so received shall be distributed as follows:

"(a) To the Sales Agent the down payment of twenty-five per cent (25%).

"(b) To the Beneficiaries seventy-five per cent (75%) of all other collections, each Beneficiary to receive his or her proportionate share of the same; and

"(c) To the Sales Agent the remaining twenty-five per cent (25%) of such collections.

"The down payment on any lot contract is to be turned over to the Sales Agent at the time of the signing of such contract, and the Trustee is to make monthly distribution of all other collections to the Beneficiaries and Sales Agent."

By their deed in trust dated April 9, 1928, the owners of the land conveyed the same to the defendant bank as trustee under the above trust agreement and the property was subdivided into lots and blocks known as Lawrence Avenue Gardens Subdivision, according to plat recorded on May 28, 1928.

The plaintiff, Larsen, pursuant to orders and instructions from Gelhardt, installed sidewalks and lamp posts in the subdivision and did a small amount of other work. He commenced the work in the early summer of 1928 and finished in October, 1928. The aggregate price of the work was $5,958.75. The sum of $700 was paid on account thereof up to October, 1928. No further payments were made until December, 1928, when the trustee bank commenced making payments out of the receipts of the trust fund from the sale of lots. Prior to the beginning of these payments by the trustee bank the sales agent Gelhardt, under date of Novem-

ber 26, 1928, had by letter addressed to the bank authorized the bank in the following terms:
"Re: Lawrence Avenue Gardens
        Trust # 2131.
"Desire that the Twenty-five (25%) Per cent we are entitled to in the above Trust, be paid monthly to A. C. Larsen, 6285 Norwood Park Avenue, covering Sidewalk work completed on this Property. Bill is enclosed herewith covering same."

Under date of December 4, 1928, Gelhardt wrote the plaintiff Larsen as follows:

"Am informed that it is agreeable with the Bank to set aside Twenty-five (25%) Per cent of the monthly collections in Lawrence Avenue Gardens, Trust # 2131, to take care of your bill for sidewalks amounting to Five Thousand Two Hundred Twenty-eight ($5,228) Dollars.

"There will be a dividend of this money early in December, and monthly thereafter. Of course these collections will grow by the month, it will take two months or so before it becomes very substantial."

The bank consented to this arrangement and paid to the plaintiff out of the trust under the letter of assignment the total sum of $1,300.50 over the period beginning December 7, 1928, and ending December 27, 1929, including one payment in April, 1932. No other moneys were paid out of the trust to the plaintiff. The moneys paid into the bank on lot sales contracts out of which the payments to Larsen were made, did not include any down payments on the contracts. Accordingly Larsen received no portion of any of the down payments. John M. Treveiler, an assistant trust officer of the bank, witness for the defense, testified that the moneys so paid to Larsen represented the share Gelhardt would have received had he not instructed the bank in accordance with his letter of November 26, 1928 (letter of assignment). These payments to Larsen

were made by voucher checks on the bank, each of which showed Larsen's receipt in settlement of account either in exactly or in effect the following words: "For installing sidewalks account J. H. Gelhardt's assignment."

Gelhardt had proceeded to sell quite a number of lots to contract purchasers but he breached the contract (sales agreement). It developed that Gelhardt had accepted and retained down payments in excess of 25 per cent of the lot sales contract price. As Austin J. Rooney, one of the beneficiaries under the trust, testified "under the agreement the bank was to get the down payment," and as the attorney for the defendant Crowley (successor trustee) stated at the hearings before the master the down payment—"was to be paid to the Union Bank as trustee and they were to pay him, if it was properly only the 25 per cent, they were to pay him that amount of money for his services; if it was 50 per cent they were to give him half of it. All in excess of this 25 per cent of the sales price was to be divided equally between the subdivider and the beneficiaries of the trust—not equally but 25 per cent; he was still to receive the 25 per cent of the subsequent payment."

As a result of these breaches of the sales agreement by Gelhardt, on or about October 31, 1929, the same was canceled and later a new sales contract under date of December 9, 1929, was entered into between the same parties. It should be noted that plaintiff makes no claim under this latter new sales agreement—his claim is under the original sales agreement to the time of cancellation and under the trust agreement.

There were 19 instances of down payments on lot sales contracts in excess of 25 per cent of the contract price during the period commencing January 23, 1929, and ending August 21, 1929, which down payments were kept by Gelhardt. This was within the period during which both the original sales agreement, the letter of assignment and the trust agreement were in

full force. The total amount of that part of these down payments in excess of 25 per cent of the respective contract sales prices received and withheld by Gelhardt is the sum of $11,012, one-fourth of which, or the sum of $2,753, is the amount plaintiff claims never was but should have been distributed to him under the assignment to apply on his unpaid bill for the sidewalk work.

On June 24, 1932, the trustee bank was closed by order of the auditor of public accounts, and on June 28, 1932, the defendant James S. Rodie became the duly qualified and acting receiver of the bank. John F. Crowley was appointed on July 22, 1933, as successor to the bank under the trust agreement and acquired title to the subdivision as such successor trustee by virtue of a deed from the bank dated July 22, 1933. The Union Bank of Chicago was insolvent at the time of the hearings.

The question in this case is largely a question of the construction of the sales agreement and the trust agreement, and from an examination of both of these documents it is apparent that the agent Gelhardt is entitled to a down payment of 25 per cent upon the sale of the lots in question, and a further 25 per cent of the balance of the amount that is to be paid in the purchase of the property. This amount is to pay for the laying of sidewalks, and the installing of lamp posts for which work Gelhardt arranged with the contractor and prepared a written assignment whereby the trustee agreed to pay to the plaintiff the amount due under the second item referred to herein, meaning 25 per cent of the balance of the collection in the sale of the lots. From the record it appears that in the sale of the lots a larger down payment was made to Gelhardt, and that there were 19 instances of down payments on lot sales contracts in excess of 25 per cent of the contract price during the period commencing January 23, 1929, and ending August 21, 1929, which down payments were kept by Gelhardt in violation of the terms of the agreement that is in the record, and it was within the period dur-

ing which both the original sales contract, the letter of assignment and the trust agreement were in full force that these collections were made by Gelhardt. The total amount received and withheld by Gelhardt was $11,012, one-fourth or 25 per cent of which would be $2,753, the amount plaintiff claims was due under the assignment to apply on his unpaid bill for the sidewalk work.

It was contemplated from the trust agreement, together with the sales contract, that a down payment of 25 per cent of the purchase price was to be paid at the time the trustee signed the purchase contract. The trust agreement provides that the down payment on any lot contract is to be turned over to the sales agent at the time of the signing of such contract, so it appears when Gelhardt in his letter of assignment dated November 26, 1928 stated: ''Desire that the twenty-five (25%) Per cent we are entitled to in the above Trust be paid monthly to A. C. Larsen—'' the conclusion is without doubt that the 25 per cent intended was the 25 per cent of the balance of 75 per cent of the purchase price. The plaintiff does not claim any part of the 25 per cent down payment, but his contention is that he is entitled to 25 per cent of the 75 per cent of the balance due in the purchase of the lots. However, there seems to be a question as to the duty of the trustee at the time it signed the real estate contract, in so far as the receipt of the money was to be applied in accordance with the terms of the contract. This contract of sale of lots was presented to the bank for signature, and on the face of the contracts they showed the purchase price and a down payment, the balance to be paid in monthly installments, and it is claimed by the plaintiff that the trustee knew that it was not receiving the down payments, and if it did not receive them the sales agent must have received them, and as we have said, these contracts showed on their face that the down payment in 19 instances exceeded 25 per cent of the purchase price, and this after the trustee had

received notice of Gelhardt's assignment to the plaintiff and knew that the plaintiff was entitled to a share in these excessive down payments. The duty of the trustee, as provided for by the documents in the record, was to collect the down payments, and in the distribution thereof the trustee had a duty to perform and should have protected not alone the interest of the beneficiaries in this agreement, but also the parties to the contracts and the assignment providing for certain payments to be made to the plaintiff, and, having signed the contracts, when the amounts provided for in the contract were not received by it so as to make this distribution, it violated the terms of the contract providing for collection and distribution of the down payments by the trustee.

It has been well said that the signature of the trustee to the real estate contract for purchase changed the legal character of what were at the time of signature mere deposits for purchase, and the trustee bank had within its power to withhold its signature, and by failure to withhold its signature it failed to fulfill its agreement to collect and distribute the down payments and accordingly is liable to the plaintiff for breach of contract.

The Union Bank of Chicago, the trustee in the matter here considered, was closed by the auditor of public accounts. It has ceased to do business. It is in receivership and is insolvent. Under such circumstances the plaintiff is entitled to reach the trust estate directly in this proceeding, and is entitled to an equitable lien to the extent of his claim on the amount that the trustee had collected.

For the reasons stated the order dismissing the plaintiff's amended bill of complaint is reversed and the cause is remanded with directions to the court to enter a decree in accordance with the views expressed herein.

*Reversed and remanded with directions.*

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.